IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

CRISTINO RIVERA,

          Defendant.

CRIMINAL ACTIONS
NOS. 17-24

## OPINION

**Slomsky, J.**                                                              **August 4, 2022**

### I.   INTRODUCTION

Defendant Cristino Rivera is serving two consecutive sentences—a 120-month sentence and a 9-month sentence.  On January 25, 2022, Defendant filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 37).  In his Motion, Defendant argues that "the combination of his medical conditions, [the] growing pandemic, and rehabilitation constitutes extraordinary and compelling circumstances" to warrant a reduction of his sentence. (Doc. No. 37 at 15.)  Defendant further contends that he "know[s] that [he] made a major mistake, trying to sell drugs," his "family needs [him]," and he has "changed his life course."   (Doc. No. 37 at 6, 14, 15.)

The Government opposes Defendant's Motion, citing the fact that he is vaccinated against COVID-19, the numerous measures the Board of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities, and the severity of Defendant's underlying offenses as reasons why release should be denied.  (See Doc. No. 39 at 5, 20, 21, and 24.)

For the reasons that follow, Defendant's Motion for Compassionate Release (Doc. No. 37) will be denied.

1

## II.      BACKGROUND

### A. Defendant's Criminal History

Defendant Rivera's criminal history begins in 1991 when he received juvenile adjudications for unauthorized use of a motor vehicle and theft of a motor vehicle.  (See Doc. No. 39 at 1.)  In 1993 and 1994, he was adjudicated as a juvenile for possession of an instrument of crime, theft and receiving stolen property, bribery, conspiracy, and escape.  (See id.)  His first adult convictions were in 1997 for petit larceny, trespassing, and resisting an officer.  (See id.)  From 2000 to 2003, Defendant has convictions for possession with the intent to distribute cocaine base and alprazolam and conspiracy, possession with the intent to distribute cocaine base and conspiracy, terroristic threats, burglary, possession of an instrument of crime, and corruption of minors.  (See id.)

Defendant Rivera is presently incarcerated at Federal Correctional Institution ("FCI") Hazelton in Bruceton Mills, West Virginia and is serving the two sentences consecutively: (1) 120-month sentence for possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 942(e); and (2) 9-month sentence for attempted possession of contraband in prison, in violation of 18 U.S.C. §§ 1791(a)(1) and (b)(2).  (See id. at 2–3.)

In the first case, Defendant was pulled over in his vehicle by a police officer after making a drug purchase on the street.  (See id. at 2.)  An officer observed him place an object behind the front passenger seat where a 3-year-old child was sitting  (See id. at 2.)  The object was a "semiautomatic Glock handgun with an extended magazine that held 29 live rounds of ammunition."  (Id.)  On January 22, 2017, Defendant entered a plea of guilty to the sole count in the indictment—possession of a firearm by a felon.  (See id.)  For this offense, Defendant was sentenced to 120 months' imprisonment to be followed by a 5-year period of supervised release. (See id. at 2-3.)

2

In the second case, on August 28, 2017, Defendant attempted to have his mother smuggle a quantity of ADB-FUBINACA, a Schedule I controlled substance, into the Federal Detention Center-Philadelphia, where Defendant is an inmate serving his 120-month sentence for the firearm charge.  (See id. at 2.)  For this offense, "the Court imposed a sentence of 9 months' imprisonment to run consecutive to the 120-month sentence in [the firearms] case . . . , to be followed by a 3-year period of supervised release."  (Id. at 3.)

To date, Defendant has served approximately 66 months and has apparently accumulated credit for good conduct of approximately 8 months, for total time served of approximately 74 months.  (See id.)  During his time in custody, Defendant has two disciplinary infractions: the first occurred on October 20, 2017, for refusing to obey an order, and the second occurred on January 6, 2020, for use of drugs/alcohol.  (See id.)

**B. Defendant's Pro Se Motion for Compassionate Release**

On November 19, 2021, Defendant submitted a request to the Warden for a reduction of his sentence through compassionate release.  (See id. at 4.)  Defendant's request was based on the following medical conditions: "seizures, open heart surgery, biopoly (sic), high blood pressure, diabetes, high cholesterol, migrants (sic), shot in the head, pains all the time, as well as the risk presented should the defendant contract COVID-19."  (Id.)  On December 3, 2021, the Warden denied this request stating that "[Defendant] do[es] not suffer from a progressive illness that has affected [his] ability to self-care and . . . [is] not confined to a bed or chair 50% of waking hours." (Doc. No. 37 at 8.)

On January 25, 2022, Defendant submitted his pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 37).  In the Motion, Defendant avers that "the combination of his medical conditions, growing pandemic, and rehabilitation constitutes,

3

extraordinary and compelling circumstances" that the Court can "incorporate by reference and grant release." (Id. at 15.) Defendant's Motion also includes statements regarding the COVID-19 protections in place at FCI Hazleton  (See id. at 16.)  He states, "for your information, this institution . . . allow[s] inmates to come on [to] the units . . . without testing for COVID-19", and he emphasizes that "the Omicron virus is well and alive at FCI Hazelton."  (Id.)

### C. The Government's Response in Opposition to Defendant's Motion

On March 11, 2022, the Government filed a Response in Opposition to Defendant's Motion (Doc. No. 39).  In its Response, the Government argues that the Motion should be denied because Defendant "has been vaccinated against COVID-19 and therefore does not present an extraordinary and compelling reason permitting relief."  (Id. at 1.)

Regarding Defendant's medical issues, the Government attached Defendant's sealed medical records and concedes that Defendant, age 45, presents "Type 2 diabetes, obesity . . . , epilepsy/seizure disorder, bipolar disorder, migraine headaches, hypertension, and a Vitamin D deficiency."  (Id. at 4.)  However, the Government asserts that these medical conditions appear well-controlled with medication provided by the institution, noting that during one of his medical examinations, Defendant denied having chest pains, vision changes, lightheadedness or other symptoms.  (See id. at 5.)  The Response also mentions that Defendant's last documented seizure occurred in November 2017.  (See id.)

Further, the Government highlights that the Bureau of Prisons ("BOP") continues to take "aggressive steps to mitigate the spread of COVID-19 by restricting visitation, isolating [exposed] inmates . . . , testing all arriving and departing inmates, offering vaccines, . . . and more."  (Id.)  It

mentions that "at present, there are no inmates who are reported positive . . . [, and] there have been two COVID-related death[s] at this institution."[1]   (Id.)

Most importantly, the Government emphasizes the fact that Defendant received both doses of the Pfizer COVID-19 vaccine in March 2021, and maintains that Defendant is "fully ambulatory and engages in all normal activities of daily living."  (Id.)  As such, the Government contends that Defendant "no longer presents an 'extraordinary and compelling reason' because he has been vaccinated."  (Id. at 13.)

Moreover, the Government asserts that even if Defendant were at an elevated medical risk, relief should be denied.  (See id.)  It explains that the Court must consider "all pertinent circumstances, including the 3553(a) factors, and possible danger to the community."  (Id. at 19–20.)  The Government maintains that Defendant "continues to present a danger to the community and should be required to serve the sentences that were imposed for his criminal conduct."  (Id. at 21.)  It highlights Defendant's firearm offense and drug-smuggling to emphasize in support of its position.  (See id. at 21.)  Furthermore, it notes that Defendant has a "lengthy record of serious criminal conduct" and he has "fail[ed] to demonstrate how release, 71 months into terms totaling 129 months for a serious firearm crime and prison smuggling, reflects the seriousness of the offenses."  (Id.)

In the Government's view, "a consideration of the [§ 3553(a)] factors . . . shows that release at this point is inappropriate based on the offenses of conviction, the defendant's managed medical condition, and the amount of time remaining on the defendant's sentence."  (Id.)

---

[1]   The Government's statistics begin in March, 2022, when the Response was filed; however, the Response provides a link to the BOP's website that shows the latest statistics.  (See Doc. No. 39 at 5.)  According to the BOP's website, FCI Hazelton currently has no inmates testing positive there.  Two COVID-19 deaths did occur since the start of the pandemic. See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (June 16, 2022), https://bop.gov/coronavirus.

**D. Defendant's <u>Pro Se</u> Reply**

On March 20, 2022, Defendant filed a Reply to the Government's Response (Doc. No. 43). In his Reply, Defendant elaborates on his medical conditions, which consist of "seizures, open heart surgery, biopoly (sic), diabetes, migrants (sic), high cholesterol, pain all the time, and shot in the head." (<u>Id.</u> at 2.)  He argues that these medical conditions, in combination with the COVID-19 pandemic and FCI Hazelton's lack of appropriate medical services, constitute extraordinary and compelling reasons that warrant his release.  (<u>See id.</u> at 5.)

Defendant admits that he is presently incarcerated in a "Level II care facility," but claims that FCI Hazelton, "los[t] it's contract with its hospital due to…[not] meeting its obligations."[2]  Furthermore, Defendant maintains that "[FCI Hazelton] los[t] its ambulance services, due to contract dispute[s], detailing wages," and is "under investigation pending a 'myriad' of medical lawsuits"  (<u>Id.</u>)  However, Defendant does not provide evidence supporting these statements. Regarding the state of COVID-19 transmission at FCI Hazelton, Defendant concedes that "at the present there [are] no reported positive test[s]," but argues that this is because "they m[a]nipulate COVID-19 protocols by 'not testing nobody.'"  (<u>Id.</u> at 4.)  Defendant further contests the Government's statistics regarding COVID-19 deaths at FCI Hazelton, and asserts that there were seven COVID-19 deaths at the facility, including two in the last three months.[3]  (<u>See id.</u>)

---

[2]   The BOP's website currently lists FCI Hazelton as a Level II care facility.  Level II facilities are characterized as having increased operational and general modifications to protect against the spread of COVID-19; this includes limiting capacity and requiring face coverings in common spaces.  <u>See</u> <u>Modified Operational Levels</u> Federal Bureau of Prisons (July 19, 2022), https://bop.gov/coronavirus.

The BOP's website states that institutions determine their operational level "based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective county transmission rates."  (<u>Id.</u>)

[3]   Defendant does not furnish information on how he arrived at these statistics.  However, see footnote one, <u>supra,</u> for the BOP's latest COVID-19 statistics.

Lastly, Defendant emphasizes his remorse for his crimes, his rehabilitation efforts, and that

he is "not a community threat."  (Id. at 7.)

## III.   DISCUSSION

### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been

imposed . . ." 18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general

"rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the

compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step

Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's

motion after the defendant has exhausted his administrative remedies.[4]  See § 3582(c)(1)(A)(i).

The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in [§ 3553(a)]
> to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a
>> reduction; . . .

---

[4]   A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion.  In its Response in Opposition, the Government concedes that more than thirty days have passed since Defendant's request was received by the Warden.  (See Doc. 39 at 4.)  Because over thirty days have elapsed from the date of Defendant's request and the filing of the instant Motion, he has met the exhaustion requirement.

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1)  (A)  Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2)  the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)  the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13 n.1(A)-(C).  This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
> (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end   of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is

not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

(I)    suffering from a serious physical or mental condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant. The defendant

(i)    is at least 65 years old;

(ii)    is experiencing a serious deterioration in physical or mental health because of the aging process; and

(iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family circumstances.

(i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a

court to modify a sentence for "extraordinary and compelling reason[s] other than, or in

9

combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[5]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596.  Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age,

---

[5]   Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is

consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion (Doc. No. 37) will be denied.  Even if Defendant's medical conditions create a higher risk of an adverse outcome from COVID-19, he is fully vaccinated against COVID-19.  Further, the relevant 3553(a) factors weigh against a reduction of his sentence.[6]  Each of these conclusions is discussed in turn below.

#### 1. Defendant is Fully Vaccinated Against COVID-19 and No Longer Presents an Extraordinary and Compelling Reason For His Release.

Defendant asserts in his Motion that the "combination of his medical conditions [and] the growing pandemic" constitute extraordinary and compelling reasons for his release.  (See Doc. No. 37 at 15.)  Specifically, in his Reply, Defendant highlights the presence of the Omicron variant of COVID-19 at FCI Hazelton and relies on lack of adequate testing, insufficient medical services, and COVID-19 deaths at the facility to support his contention.  (See Doc. No 43 at 4–5.)

In its Response, the Government concedes that Type 2 diabetes, obesity, and hypertension are risk factors for an adverse outcome from COVID-19, and that Defendant has such risk factors.  (See Doc. No. 39 at 13.)  However, the Government maintains that he "no longer presents an 'extraordinary and compelling reason' because he has been vaccinated."  (Id.)

Because Defendant's medical records show he has Type II diabetes, hypertension, and obesity (See Doc. Nos. 37 at 11; 40 at 16, 29), for purposes of this Motion, the Court will assume without deciding that Defendant's medical conditions ordinarily present extraordinary and

---

[6]    Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence would be consistent with applicable policy statements of the Sentencing Commission.

compelling reasons in light of the COVID-19 pandemic.[7]   However, Defendant received both

doses of the Pfizer COVID-19 vaccine in March 2021.  (See Doc. No. 40 at 106.)  According to

the Center for Disease Control ("CDC"), the vaccines are effective in preventing severe illness.

The CDC states:

> Vaccines reduce the risk of COVID-19, including the risk of severe
> illness and death among people who are fully vaccinated.  In
> addition to data from clinical trials, evidence from real-world
> vaccine effectiveness studies show that COVID-19 vaccines help
> protect against COVID-19 infections, with or without symptoms
> (asymptomatic infections)…
>
> New variants of the virus that causes COVID-19 are spreading in
> the United States and in other parts of the world.  COVID-19
> vaccines are effective against the Delta variant with widespread
> circulation in the United States.  Current vaccines are expected to
> protect against severe illness hospitalizations, and deaths due to
> infection with the Omicron variant… [8]

COVID-19 Vaccines Work, CENTERS FOR DISEASE CONTROL AND PREVENTION, (July, 2022)

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

---

[7]   The CDC notes that diabetes, hypertension, and obesity are COVID-19 risk factors.  See People With Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION, (July, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[8]   The CDC also notes that most people will need to obtain booster shots to maximize the effectiveness of the vaccines.  The CDC states, "Everyone ages 18 and older should get a booster shot either 6 months after their initial Pfizer or Moderna series, or 2 months after their initial Johnson & Johnson's Janssen vaccine."  See COVID-19 Vaccines Work, CENTERS FOR DISEASE CONTROL AND PREVENTION, (June 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

As of January 2022, according to his BOP medical records, Defendant has not received a booster.  (See Doc. No. 40.)  The Government in its Response notes that boosters are available to all BOP inmates, and if Defendant has not received one yet, he should ask for one.  (See Doc. 39 at 13.)

Thus, Defendant's medical conditions no longer present an extraordinary and compelling reason to support compassionate release because he is vaccinated, and vaccines are proven effective protection against illness or death after contracting COVID-19.  Further, case law from courts in this district supports this conclusion.  See, e.g., United States v. Limehouse, No. 08-0223-1, 2021 WL 1387756, at *6 (E.D. Pa. Apr. 13, 2021) ("FCI Cumberland is . . . in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines."); United States v. Slone, No. 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021) ("To the extent Mr. Slone believes his asthma puts him at risk for COVID-19, the risk is mitigated having received two doses of the effective Moderna [COVID-19] vaccine and he otherwise does not present health concerns rising to the level of extraordinary and compelling reasons for release."); United States v. Webb, No. 09-755, 2022 WL 206174, at *4 (E.D. Pa. January 24, 2022) ("Additionally, the fact still remains that Defendant is relatively young (he is forty-six) and has received at least two doses of the Pfizer vaccine."); United States v. Haywood, 2022 WL 541776, at *4 (E.D. a. Feb. 23, 2022) ("Additionally, even amongst older adults, those who are vaccinated "showed a 94% reduced risk of COVID-19 related hospitalization.") (citing COVID-19 Risks and Vaccine Information for Older Adults, CDC, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last updated August 4, 2021)).

Moreover, Defendant cites his concerns over the Omicron variant of COVID-19 in his motion.  (See Doc. No. 37 at 16.)  As discussed supra, the CDC expects the vaccines to be effective protection against the Omicron variant.  Correspondingly, courts have maintained the same position on motions for compassionate relief despite the emergence of the Delta and Omicron variants.  See, e.g., United States v. Riddick, No. 95-73-1, 2022 WL 138074 at *4 (E.D. Pa. January 14, 2022) ("Although the vaccines do not prevent all infections, they have been found to provide

14

strong protection from severe disease, hospitalization, and death from COVID-19…the current vaccines are also expected to protect against severe illness, hospitalization and deaths due to infection with the newer Omicron variant.); United States v. Mansfield, 2: 17-CR-00205-DCN-1, 2022 WL 44987, at *2 (D.S.C. Jan. 5, 2022) ("However, current information from the [CDC] suggests that the vaccines will continue to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant . . . The court does not find that the Omicron variant changes the calculus on the matter at this time.") (internal quotations and citations omitted).

Thus, the presence of the Omicron variant does not alter the conclusion that Defendant has sufficient protection from severe illness if he contracts COVID-19, and, simply put, his medical condition does not rise to the level of an extraordinary and compelling reason for his release.[9]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Furthermore, the relevant § 3553(a) factors do not support Defendant's compassionate release.   First, the Court has examined the nature and the circumstances of the offense and Defendant's history and characteristics.   See § 3553(a)(1).   Defendant, age 45, is presently incarcerated for possession of a firearm by a felon and for attempted possession of contraband in prison.  (See Doc. No. 39 at 2–3.)  The Government in its Response emphasizes that "[D]efendant has a lengthy record of serious criminal conduct, including convictions for three felony drug offenses and burglary, as well as the commission of crimes while on parole or supervised release." (Doc. No. 39 at 21.)

As a felon with multiple convictions, Defendant was found in possession of a 9mm

---

[9]   Defendant is 45 years old.  (See Doc. No. 40.)  He does not suffer from a terminal illness or a serious cognitive impairment, and he is not a caregiver to minor children. See § 1B1.13 n.1(A)-(C).   Thus, the factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(A)- (C), are not relevant here.

semiautomatic handgun with an extended magazine containing 29 rounds of live ammunition.  When stopped by the police, Defendant decided to place the dangerous weapon behind his seat where a young child was seated.  (See id.)  During his incarceration for the above offense, Defendant planned with his mother to have her smuggle drugs into FDC Philadelphia.  (See id.)  While Defendant has apparently received credit for good conduct time, he has two disciplinary infractions, including one for the use of drugs/alcohol.  (See id. at 3.)  And Defendant's criminal history dates back to 1991, with multiple juvenile adjudications.  While an adult, Defendant has shown a propensity to continue his criminal activity.  Accordingly, the first factors noted weigh heavily against Defendant.

Second, the Court has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him.  See § 3553(a)(2)(A)-(C).  Defendant has served a little more than half of his 129-month sentences. [10]  (See Doc. No. 39 at 3.)  Despite Defendant's contention that he is "remor[s]eful for [his] crime" and is "not a community threat" (Doc. No. 43 at 5), the Government believes that he "continues to present a danger to the community and should be required to serve the sentences that were imposed for his criminal conduct."  (See Doc. No. 39 at 21.)  The Court agrees with the Government and finds that Defendant's release at this point would neither reflect the seriousness of his offenses, promote respect for the law, provide just punishment,

---

[10] In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

afford adequate deterrence, nor protect the public from further crimes he may commit.

Third, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See § 3553(a)(6). Defendant received a 120-month sentence for the firearm offense, which was below the advisory guideline range of 151 to 188 months' imprisonment, which became 180 to 188 months due to the statutory minimum being greater than the guideline range.   (See Doc. No. 39 at 2.)   The Government in its Response emphasizes that Defendant's sentence "represented a substantial break conferred upon [him]." (Id. at 3.)  Similarly, for the drug offense, Defendant received a 9-month incarceration sentence to run consecutive to the 120-month sentence, when the advisory guideline range was 30 to 37 months' imprisonment.  (See id.)  Given Defendant's extensive criminal history, and the seriousness of his offenses, for which he received sentences below the guideline ranges, these factors weigh against granting Defendant's request for a sentencing reduction.

Finally, other courts in this District have denied compassionate release in cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief.  See, e.g., United States v. Glenn, No. 15-99, 2021 WL 3190553, at *7 (E.D. Pa. July 28, 2021) (denying compassionate release because, notwithstanding the defendant's diabetes, "the relevant § 3553(a) factors d[id] not support his compassionate release to home confinement or a sentence reduction"); United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic"); United States v. Holmes, No. 08-495, 2020 WL 4504440, at

17

*3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical conditions, the [c]ourt's analysis does not end here. [T]he [c]ourt [must] consider the 'factors set forth in section 3553(a)to the extent they are applicable' before [it] may reduce [defendant's] sentence. These factors . . . support the need for [defendant] to serve the sentence imposed.").

In sum, none of the § 3553(a) factors favor Defendant's release.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 37) will be denied. An appropriate Order follows.